SHARON L. NELSON
Nevada Bar No. 6433
NELSON LAW
8670 W. Cheyenne, Suite 120
Las Vegas, Nevada 89129
Telephone:      (702) 247-4529
Facsimile:      (702) 737-4529

MIKE MEIER
*To be admitted pro hac vice*
INTERNATIONAL LAW GROUP, LLC
6525 76th Street
Cabin John, MD 20818
Telephone:      (202) 544-7745
Facsimile:      (202) 544-7746

Attorneys for Plaintiffs
OLIVER AND BEATRICE PREISS

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| OLIVER PREISS, an individual, and BEATRICE PREISS, an individual; <br><br> Plaintiffs, <br> v. <br><br> S&R PRODUCTION COMPANY, a Nevada Corporation; and ROY HORN AKA UWE LUDWIG HORN AKA ROY UWE HORN, an individual, DOES and ROES 1-100, <br><br> Defendants. | CASE NO.: 2:10-cv-01795-RLH-RJJ <br><br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |

Plaintiffs Oliver and Beatrice Preiss (jointly "Plaintiffs"), by and through counsel, respectfully submit this Memorandum of Points and Authorities to support their Opposition to the Motion to Dismiss submitted by the Defendants S&R Production Company et al. (jointly "S&R et al."). In their Motion to Dismiss, S&R et al. seek dismissal of all causes of action

against Defendant S&R Production Company, and the dismissal of the Sixth and Seventh Causes of Action with prejudice.

Notably, S&R et al. do not contest the Fourth (Assault and Battery), Fifth (Intentional Infliction of Emotional Distress), and Eighth (Loss of Consortium) Causes of Action, nor deny the substance of those claims.

Plaintiffs' Opposition to Defendants' Motion is made and based on the pleadings and papers on file herein, the points and authorities set forth below and any argument this Court wishes to entertain.

Dated this 8 day of November 2010.

**NELSON LAW**

SHARON L. NELSON
Nevada Bar No. 6433
8670 W. Cheyenne, Suite 120
Las Vegas, Nevada 89129
Attorneys for Plaintiff

MIKE MEIER
*To be admitted pro hac vice*
INTERNATIONAL LAW GROUP, LLC
6525 76th Street
Cabin John, MD 20818

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

In this action, Plaintiffs allege that Plaintiff Oliver Preiss suffered, *inter alia*, assault and battery, sexual harassment, hostile work environment, as well as retaliation, during his

employment with S&R et al. The claims of Plaintiff Beatrice Preiss result from the abuse her husband Oliver suffered.

## II.   FACTUAL BACKGROUND

Oliver Preiss, a German citizen,  and his wife Beatrice Preiss (collectively referred to as "Plaintiffs"), filed the present lawsuit against S&R Production Company, Roy Horn, and DOES and ROES 1-100 (collectively referred to as "S&R et al."). Oliver was employed by S&R et al. for approximately two years. Defendant Horn is an entertainer and part of "Siegfried & Roy" who performed in Las Vegas until a tiger injured him on stage in 2003.

Defendant Horn has a group of male employees assisting him around the clock. The assistants help Horn with all his daily needs, for example getting dressed, grooming, and running errands. Oliver Preiss was one of these assistants.

S&R et al. operate, or are affiliated with, a variety of companies, including: (1) Siegfried & Roy Enterprises, Inc., (2) Siegfried & Roy Foundation, Inc.; and (3) S&R Presents. On information and belief, all of these entities have interrelated operations and a common management, centralized control of labor relations, and common ownership and financial control.

Early on, both Siegfried Fischbacher and Roy Horn made sexual overtures that Preiss rebuked. After a few unsuccessful attempts, Fischbacher discontinued his requests for sexual favors. Beginning in January 2010, Defendant Roy Horn's request to Plaintiff for sexual favors were more insistent, and he began frequently groping Oliver Preiss' genitals and nipples, inside and outside of Preiss' clothing. Also, Defendant Roy Horn ordered Preiss repeatedly to touch Horn's penis. Preiss consistently refused. Oliver Preiss is heterosexual and married.

During the course of his employment, Oliver Preiss learned that Defendant Horn's sexual assaults of employees were rampant. Defendant Horn's unwelcome sexual advances and sexual assaults put great strain on Preiss' marriage relationship as it caused him anxiety and disturbed the interaction with his wife. In April 2010, the situation at the workplace became untenable as Defendant Horn's groping and assaults became more insistent, and Preiss refused to provide the requested sex acts. Defendant Horn, apparently finally convinced that Plaintiff Preiss was unwilling to engage in sexual conduct with him, told Preiss to stay home and quit coming to work. On or about April 28, 2010, Defendant Horn requested that Preiss return the keys to the premises.

Surveillance videos of the workplace show Roy Horn's rampant sexual harassment, sexual assaults, lewd and lascivious conduct, as well as unwanted forced sexual groping of, and offensive physical contact with, multiple male employees. Oliver Preiss appears as one of the victims in the videos. The videos also show Roy Horn committing sodomy with at least one of the employees. The videos show Defendant Horn manhandling some of the substantially smaller assistants. For example, one of the videos shows Defendant Horn violently slapping around assistant P. (the smallest of the assistants at the time), and forcibly kissing P. on the mouth.

When Preiss's wife Beatrice saw the surveillance videos and learned about the events occurring at Oliver Preiss's workplace, it increased marital tensions as the videos showed Preiss, among other victims, being treated as a sex object by Horn.  Observing the sexual abuse of her husband at the hands of Defendant Horn caused Plaintiff Beatrice Preiss extreme emotional distress resulting, among other things, in sleepless nights, arguments between the spouses, marital tensions, and other physical symptoms.

Plaintiff Oliver Preiss is in medical treatment as a result of the sexual harassment, and on anxiety medication. He is suffering from extreme anxiety, depression and insomnia. Subsequent to leaving the S&R et al. employment, because of extreme anxiety, Preiss secured his home with multiple alarm systems, security cameras, and bullet-proof windows, at a cost of approximately $30,000.

On June 1, 2010, Preiss filed a complaint with the Equal Employment Opportunity Commission (EEOC) in Las Vegas. The EEOC issued a "right to sue" letter on June 21, 2010. Plaintiffs filed the present lawsuit on September 17, 2010, in the Eighth Judicial District Court, Clark County, Nevada. On October 15, 2010, S&R et al. removed the case to federal court, the U.S. District Court, District of Nevada. On October 22, 2010, S&R et al. filed the present Motion to Dismiss the Complaint.

## III.   DISCUSSION

### A.   Standard of Review

To prevail on a Rule 12(b)(6) motion, the moving party must demonstrate that "it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitled him to relief." *Love v. U.S.*, 915 F.2d 1242, 1245 (9th Cir. 1989) (quoting *Gibson v. U.S.*, 781 F.2d 1334, 1337 (9th Cir. 1986)). Thus, a court will only grant a motion to dismiss if the moving party demonstrates a complaint fails to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In making that determination, "court[s] presumes that all well-pleaded allegations are true, resolves all doubts and inferences in the pleader's favor, and views the pleading in the light most favorable to the non-moving party." *Great West Casualty Co. v. See*, 185 F.Supp.2d 1164, 1172 (D. Nev. 2002); *see also Albright v. Oliver*, 510 U.S. 266, 267, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994).

Courts also presume that general allegations embrace specific facts necessary to support a claim. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)).

**B.** **Oliver Preiss's Complaint Asserts Sufficient Facts Demonstrating an Employment Relationship Existed With S&R et al. And Liabilities Attached Under The Doctrine of *Repondeat Superior*; Therefore, Oliver Preiss's Claims Against Defendants S&R et al Should Not Be Dismissed.**

S&R et al. argue that Oliver Preiss's Complaint fails to allege a factual basis for holding S&R et al. liable under any theory, and that no facts support the existence of an employment relationship between Oliver Preiss and S&R et al. However, to the contrary, Oliver Preiss plead sufficient facts supporting the existence of an employment relationship and asserted liability for the conduct of Roy Horn under a theory of *respondeat superior*. (Compl. ¶ 8, 12-17, 22-30, 38-46)

Specifically, the Complaint alleges that Oliver Preiss was an employee of S&R et al. (Compl. ¶ 2, 7, 8, 14-16). In the absence of discovery, it is difficult to definitely assess or affirmatively state the exact relationship among the business entities co-owned and operated by Roy Horn. Therefore, Oliver Preiss generally and specifically plead that he was an employee of the Roy Horn and S&R et al.—the business entities known and not known to him. (Compl. ¶ 8, 14-16) Oliver Preiss' Complaint also alleges and provides sufficient facts supporting a finding that S&R et al. is an integrated enterprise, and therefore a single employer pursuant to *Kang v. U. Lim America, Inc.*, 296 F.3d 810, 815 (9th Cir. 2002) ("This circuit applies a four-part test to determine whether two entities are an integrated enterprise for purposes of Title VII … The four

factors are: '(1) interrelation of operations; (2) common management; (3) centralized control of labor relations; and (4) common ownership or financial control.'").

Further, the Complaint details the extent of Oliver Preiss' employment relationship, demonstrating he provided services for which he was remunerated.  The complaint also describes how Oliver Preiss's employment developed from temporary/part-time to full-time employment with S&R et al.  (Compl. ¶ 21-54)

Importantly, S&R et al. are liable for Oliver Preiss's injuries under the doctrine of *respondeat superior* because Roy Horn was acting within the scope of his employment when he injured Plaintiffs.  Since the tiger attack of 2003 and the resulting impairments, Roy Horn has required assistance fulfilling his executive and managerial duties with S&R et al., which included, among other things, assistance with daily errands; dressing; making travel arrangements; and accompaniment to appointments, social functions, and events.  Oliver Preiss serviced those needs on a daily basis (Compl. ¶ 27).  Therefore, when Roy Horn caused Oliver Preiss' injuries during employment hours, Roy Horn was acting within the scope of his employment with S&R et al., and consequently, S&R et al. are vicariously liable.  *See Jane Doe A. v. Green*, 298 F.Supp.2d 1025. 1040-41 (D. Nev. 2004) ("... Nevada state common law holds employers vicariously liable for the tortious conduct of their employees if the employee was acting within the scope of his employment at the time he engaged in the offensive conduct. ... Generally, whether an employee was acting within the scope of his or her employment for the purposes of respondeat superior liability is a question to be determined by the trier of fact. ...[T]his Court concludes that the Defendant School District is subject to respondeat superior liability for the tortuous acts committed by [employee] at those times in which he was engaged— or should have been engaged—in his duties ..."); *see also Prell Hotel Corp. v. Antonacci*, 86

Nev. 390, 391, 469 P.2d 399, 400 (1970) (a blackjack player sued a hotel under a theory of respondeat superior after one of its dealers punched the player in the face. The Nevada Supreme Court held the employer vicariously liable because the assault occurred within the scope of the task assigned to the dealer); *Switzer v. Rivera*, 174 F.Supp.2d 1097, 1106 (D. Nev. 2001)(all of the conduct occurred in or around the kitchen area and in the course of the co-workers' duties as cooks. Individual Defendants allegedly flipped grease on Plaintiff, hit her on the buttocks with a bag of french fries, and made lewd gestures with sausage links. Because these and other actions fell within the scope of the tasks assigned to the employees, employer may be held liable for the intentional and negligent torts allegedly committed by them).

Pursuant to the standards of a 12(b)(6) motion, Oliver Preiss has plead sufficient facts supporting an employment relationship with S&R et al. and vicarious liability for Roy Horn's conduct. Whether an individual was acting within the scope of his employment is a question of fact to be determined by the fact finder. *Jane Doe A. v. Green*, 298 F.Supp.2d at 1040-41 (Generally, whether an employee was acting within the scope of his or her employment for the purposes of respondeat superior liability is a question to be determined by the trier of fact.)

**B.**   **Oliver Preiss's Complaint Asserts Sufficient Facts Supporting A Finding That Roy Horn Is An Employer Within The Meaning Of Title VII Of The Civil Rights Acts of 1964, And Therefore Can Be Held Liable For Violations Under That Act.**

Next, S&R et al. argue Roy Horn is not an "employer" within the meaning of Title VII of the Civil Rights Act of 1964. However, Section 2000e(b) of Title 42 defines employer as "a person engaged in an industry affecting commerce who has fifteen or more employees . . . " Thus, an individual or business entity meeting these requirements is an employer under Title VII and therefore subject to its strictures. *See id*.

Furthermore, as discussed above, Plaintiffs' Complaint asserts that Defendant Roy Horn operates and is a part of a variety of companies which act together and appear to be under common control.  Accordingly, Roy Horn and those entities are an integrated enterprise pursuant to *Kang v. U. Lim America, Inc.*, 296 F.3d 810 (9th Cir. 2002).  *See Kang*, 296 F.3d at 815 (*"This circuit applies a four-part test to determine whether two entities are an integrated enterprise for purposes of Title VII … The four factors are: '(1) interrelation of operations; (2) common management; (3) centralized control of labor relations; and (4) common ownership or financial control.'"*).  Further, as plead in the Complaint and discussed above, Plaintiffs do not have sufficient information to definitely explain the relationship between those entities.  Those facts will surface as this case proceeds and discovery begins.

According to the foregoing, Oliver Preiss has plead facts within his knowledge which support a plausible Title VII claim. (Compl. ¶ 13)

**C.    Oliver Preiss's Complaint Supports A Plausible Claim Under Title VII, And Therefore Should Not Be Dismissed.**

S&R et al. argue that Plaintiff Oliver Preiss's retaliation claim under Title VII should be dismissed because:  (i) it allegedly contradicts his EEOC complaint, and (ii) Oliver Preiss allegedly failed to exhaust his administrative remedies as to his retaliation claim.

**1.    Oliver Preiss's Complaint In This Action Does Not Contradict His EEOC Complaint.**

To begin, the EEOC charge does not contradict Plaintiff Oliver Preiss's current claim for retaliation, rather it parallels it.  As expressed in the immediate Complaint, Roy Horn explicitly stated that Oliver Preiss should quit coming to work after Oliver Preiss asserted his right to be free from sexual harassment and nonconsensual physical touching in the workplace.  (Compl. ¶ 46, 51-52).  Roy Horn further requested Oliver Preiss return the keys to the premises (Compl. ¶

53), culminating in Oliver Preiss' termination (Compl. ¶ 54). Oliver Preiss's EEOC charge represents those fact in that he quit fulfilling his duties for S&R et al. because he was explicitly told to do as much. Additionally, Oliver Preiss made his EEOC statement, which is of limited detail, in the absence of counsel and without knowledge of how he should describe the circumstances surrounding his termination. The report was written by EEOC staff.

If the Court is strained to find congruence between the EEOC charge and the current Complaint, the circumstances surrounding Oliver Preiss' termination support a finding of constructive termination. As provided by the Supreme Court, constructive discharge occurs when working conditions are so intolerable that a reasonable person would feel compelled to resign. *Pennsylvania State Police v. Suders*, 542 U.S. 129, 147, 124 S.Ct. 2342, 159 L.Ed.2d 204 (2004). *See also Goss v. Exxon Office Systems Co.*, 747 F.2d 885, 887 (3d Cir.1984) (acts of discrimination in violation of Title VII can make working conditions so intolerable that a reasonable employee would be forced to resign); *Kilgore v. Thompson & Brock Mgmt., Inc.*, 93 F.3d 752, 754 (11th Cir.1996) ("working conditions were so intolerable that a reasonable person in [his] position would be compelled to resign."); *Pena v. Brattleboro Retreat*, 702 F.2d 322, 325-26 (2d Cir.1983) (quoting Young v. Southwestern Sav. and Loan Assn, 509 F.2d 140, 144 (5th Cir.1975) ("a constructive discharge occurs when the employer, rather than acting directly, 'deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation.'").

During his term of employment, Oliver Preiss was subject to habitual and persistent groping and assault, after repeated requests for it to stop. (Compl. ¶ 46, 51) No doubt, a reasonable person under similar circumstances would feel compelled to terminate employment as

daily sexual assaults create a most egregious workplace environment.  Therefore, Oliver Preiss'

Title VII claim also survives under a constructive termination theory.

### 2.    Oliver Preiss Exhausted His Administrative Remedies.

S&R et al. also argue that "*Oliver Preiss's Retaliation Claim Also Should Be Dismissed*

*Because He Failed To Exhaust His Administrative Remedies*." (S&R et al.'s Motion, page 16).

However, Oliver Preiss did exhaust his administrative remedies because he put the EEOC on

notice of the legal theories and underlying facts supporting his claim.  Also note that Oliver

Preiss filed the EEOC charge by himself without counsel present, and the information was

written up by EEOC staff.

First, the EEOC charge does allege and provide facts supporting "retaliation": "I asked

Roy Horn to stop and he threatened my employment." [*EEOC charge*]  Thus, S&R et al. were on

notice even though "retaliation" was not checked on the complaint form.

Second, S&R et al. cite as authority *Vasquez v. County of Los Angeles*, 349 F.3d 634 (9th

Cir., 2003).  In *Vasquez*, the Court of Appeals found in favor of the Plaintiff with the facts being

similar to the case at bar. The Court of Appeals found that the Plaintiff had exhausted his

administrative remedies as to retaliation even though he did not check the retaliation box on the

EEOC complaint because "a claim of retaliation could have 'grow[n] out of the charge.'":

> Because Vasquez's EEOC charge only claimed harassment and
> different treatment, we must decide whether his current retaliation
> claim is reasonably related to the EEOC charge. In doing so, we
> may consider 'such factors as the alleged basis of the
> discrimination, dates of discriminatory acts specified within the
> charge, perpetrators of discrimination named in the charge, and
> any locations at which discrimination is alleged to have occurred.'
> [footnote omitted]. We conclude that Vasquez . . . did exhaust as to
> retaliation for filing the grievance.
>
> Vasquez's EEOC complaint alleged that he was subject to
> harassment and different treatment on March 27, 1999, . . .

Vasquez checked the box on the form for discrimination based on national origin but did not check the box for retaliation

While the EEOC charge does not contain the relevant legal theory of retaliation, it does contain the relevant factual allegations. The EEOC charge alleges that Berglund harassed Vasquez and that he was transferred …, the same acts specified as retaliation in his claim. Because an investigation of the EEOC charge would likely have revealed Vasquez's earlier grievance against Berglund, a claim of retaliation could have 'grow[n] out of the charge.' [footnote omitted] We conclude that Vasquez did exhaust his administrative remedies as to this part of his claim. Thus, we have jurisdiction to consider his retaliation claim regarding the grievance. *Id.* at 644-646.

In *Cohen-Breen v. Gray Television Group, Inc.*, 661 F.Supp.2d 1158 (D. Nev. 2009), the Nevada district court held under similar circumstances that the Defendant was not prejudiced by the alleged lack of notice of a retaliation claim. In *Cohen-Breen*, the Defendant argued that Plaintiff did not exhaust its remedies as to retaliation because (1) Defendant did not receive notice of Plaintiff's Amended Charge which included the retaliation claim, and (2) Plaintiff did not receive a right-to-sue letter for her Amended Charge. The Defendant contended that it was prejudiced because it had no opportunity to investigate or respond to Plaintiff's retaliation charge. The district court disagreed:

The court does not find Defendant's claim of prejudice compelling. The 'principal function of procedural rules should be to serve as useful guides to help, not hinder, persons who have a legal right to bring their problems before the courts, and decision on the merits should not be avoided on the basis of mere technicalities.' [*Edwards v. Occidental Chem. Corp.*, 892 F.2d 1442, 1445 (9th Cir. 1990)]. Upon receipt of the complaint, Defendant received notice of Plaintiff's retaliation claim. It is not clear, and Defendant does not explain, what effect an investigation into Plaintiff's allegations would have had. *Id.* at 1169-70.

Other federal courts have held that "retaliation" does not necessary have to be alleged in the EEOC complaint. The Fourth Circuit held in *Nealon v. Stone*, 958 F.2d 584 (4th Cir. 1992) that "[a]ll other circuits that have considered the issue have determined that a plaintiff may raise

the retaliation claim for the first time in federal court. On consideration, we find these rationales persuasive and adopt this position." *Nealon at 590*. The Fourth Circuit affirmed the *Nealon* rationale in *Jones v. Calvert Group, Ltd.*, 551 F.3d 297 (4th Cir. 2009). There, the Court also pointed out that the Nealon opinion is silent regarding the nature and timing of the retaliation. *Jones, footnote 3*; see *also Pierce v. Mansfield*, 530 F. Supp. 2d 146, 154 n.8 (D.D.C. 2008) (holding that a plaintiff "need not exhaust his administrative remedies to bring a retaliation claim"); *Turner v. Dist. of Columbia*, 383 F. Supp. 2d 157, 178 n.11 (D.D.C. 2005) (stating that "[t]he proposition that exhaustion is unnecessary for retaliation claims stems, in part, however, from the fear that filing a separate charge will result in more retaliation, and that a retaliation claim is necessarily related to the underlying charge").

Here, S&R et al. had notice of the retaliation claim, its supporting facts, and the retaliation claim would have been within the scope of the EEOC investigation because Oliver Preiss alleged he lost his job for resisting sexual harassment.

### D.   Mrs. Preiss Plead A Facial Plausible NIED Claim, Therefore Her NIED Claim Should Not Be Dismissed With Prejudice.

Further, S&R et al. aver that Beatrice Preiss's NIED claim fails as a matter of law, and therefore should be dismissed with prejudice, because she did not contemporaneously observe the emotionally disturbing events nor allege sufficient emotional distress to sustain such a claim. Again, this is a Rule 12(b)(6) motion. S&R et al. fail to carry their burden of demonstrating Plaintiffs' claim is facially implausible.

### 1. Mrs. Preiss Contemporaneously Observed The Alleged Events.

The cornerstone of Nevada's test for an NIED claim is foreseeability. *Crippens v. Sav On Drug Stores,* 114 Nev. 760, 763, 961 P.2d 761, 763 (1998); *State v. Eaton,* 101 Nev. 705, 715, 710 P.2d 1370, 1370 (1985). "It is not the precise position of [the] plaintiff or what plaintiff

saw that must be examined," but the "overall circumstances must be examined to determine whether the harm to the plaintiff was reasonably foreseeable." *Id.* at 762-63, 961 P.2d at 763. In calculating the degree of foreseeability of emotional harm to a plaintiff bystander resulting from a defendant's conduct, three factors are considered: (1) whether plaintiff was located near the scene of the accident; (2) whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of it from others; and (3) whether plaintiff and the victim were closely related. *State v. Eaton,* 101 Nev. 705, 716, 710 P.2d 1370, 1377-78 (1985), *overruled on other grounds by State, Dep't of Transp. v. Hill,* 114 Nev. 810, 818, 963 P.2d 480, 485 (1998).

To begin, Beatrice Preiss was near the scene in that she directly observed the traumatic events unfold via video, which contemporaneously related to the direct emotional shock she suffered. (Compl. ¶ 56-57) Underlying the contemporaneous factor is actual observance of an event and the time nexus between that observation and the resulting emotional and physical injuries to a plaintiff. *See id.* Hence, she satisfies the contemporaneous factor because she suffered emotional injuries with physical manifestations from seeing, for the first time, the sexual harassment, physical misconduct, and impact those acts had on her husband. (Compl. ¶ 108)

As provided in *Eaton*, a court's analysis of an NIED claim is centered on reasonable foreseeability of injury to a plaintiff with the contemporaneous consideration as one of many factors instructive of whether a plaintiff's injuries were reasonably foreseeable. *Eaton*, 101 Nev. at 716. According to those factors and the facts alleged in the Complaint, it was reasonably foreseeable that a wife would suffer emotional and physical damages from observing her husband being sexually harassed and groped at his workplace.

**2. Mrs. Preiss Alleged Sufficient Emotional Distress Resulting From S&R et al.'s Conduct.**

S&R et al. erroneously assert that Beatrice Preiss failed to allege adequate facts supporting the conclusion she suffered sufficient emotional distress to sustain an NIED claim.

As the Complaint provides, Beatrice Preiss observed videos showing forced and rampant sexual harassment and abusive treatment of her husband as a sex object. (Compl. ¶ 55-56) Like any other reasonable person under similar circumstances, Beatrice Preiss was emotionally distraught by her husband's treatment, causing marital conflict and sleeplessness—some of many physical manifestations of her extreme emotional suffering. (*Id.* at ¶ 57-58) Notably, loss of consortium causes of action illustrate the physical and emotional consequences of tortuous conduct committed on an individual's spouse. Thus, as with her loss of consortium claim, Beatrice Preiss was "deprived of the love, companionship, affection, society, solace and more of her husband." (Compl. ¶ 125). Accordingly, the severe emotional distress suffered and collective physical damages sufficiently support Beatrice Preiss's NIED claim.

Moreover, S&R et al. are improperly making factual assessments and determinations in the context of a motion where facts plead are presumed true and construed in favor of a plaintiff. *Great West Casualty Co.*, 185 F.Supp.2d at 1172.

This matter is <u>unlike</u> cases cited and the argument presented by S&R et al. Defendants rely on cases where a plaintiff asserts a minor and/or single physical injury resulting from emotional distress that is insufficient to support an NIED claim. In contrast, this is a case where severe emotional stress physically manifested from watching a loved spouse be sexually harassed at his workplace. (Compl. ¶¶ 57, 58, 108, 109) S&R et al. attempt to heighten the required burden by arguing Beatrice Preiss has not proved undergoing therapy, taken medication, or

suffered specific physical manifestation of her distress. S&R et al. support their position with *Barmettler v. Reno Air, Inc.*, 956 P.2d 1382 (Nev. 1998) and *Chowdhry v. NLVH, Inc.*, 851 P.2d 459 (Nev. 1993), which involved a summary judgment motion and direct verdict, respectively. Unlike this case, the records in those cases were adequately developed to make a determination of whether plaintiffs' physical injuries supported an NIED claim. Regarding the latter part of S&R et al.'s argument, namely the absence of asserted physical manifestation of distress, Beatrice Preiss did collectively assert as much in her Complaint, as previously discussed.

According to the foregoing and under Rule 12(b)(6) standards, Beatrice Preiss has plead sufficient facts to support a plausible claim of NIED, and S&R et al. have failed to carry their burden, as all doubts and inferences must be resolved in favor of the pleader. *Great West Casualty Co.*, 185 F.Supp.2d at 1172. Therefore, Beatrice Preiss's NIED claim should not be dismissed with prejudice because the facts alleged support contemporaneous observance of the horrific sexual harassment and mistreatment of her husband, which caused extreme emotional suffering with physical manifestations.

E. **Oliver Preiss's Complaint Pleads Facts Supporting A Viable NIED Claim Because It Demonstrates Negligent Conduct And Severe Emotional Damage With Physical Manifestations.**

**1) Oliver Preiss's Complaint Supports an NIED Claim.**

In addition to bystanders, direct victims of negligence can bring actions for negligent infliction of emotional distress. *Burns v. Mayer*, 175 F.Supp.2d 1259, 1269 (D. Nev. 2001); *Switzer v. Rivera*, 174 F.Supp.2d 1097, 1109 (D. Nev. 2001); *Olivero v. Lowe*, 116 Nev. 395, 399, 995 P.2d 1023, 1026 (2000); *Barmettler v. Reno Air*, Inc., 114 Nev. 441, 956 P.2d 1382, 1387 (1998); *Shoen v. Amerco, Inc.,* 111 Nev. 735, 748, 896 P.2d 469, 477 (1995). Under Nevada law, a claim of negligent infliction of emotional distress requires a plaintiff to show that

the defendant acted negligently, breaching a duty owed to plaintiff, and either a physical impact or, in the absence of physical impact, proof of serious emotional distress causing physical injury or illness. *Burns*, 175 F.Supp.2d at 1269.

In *Burns v. Mayer*, the plaintiff brought claims directly against defendant employees and vicariously against defendant employer for, *inter alia*, negligent infliction of emotional distress, intentional infliction of emotional distress, sexual harassment, retaliation under Title VII, assault, and battery. *Burns*, 175 F.Supp.2d at 1263. These claims arose out of allegations of sexual harassment and unwanted physical conduct in the workplace. *Id.* Specifically, plaintiff alleged sexual misconduct in the form of repeated sexual requests, inappropriate sexual jests, slapping of her buttocks, bra snapping, and other nonconsensual physical contact. *Id.* She also claimed being subject to various sexually explicit comments. *Id.* As a result, she alleged to suffer from severe headaches, stomach aches, stress, and depression; required psychiatric treatment; and was diagnosed with adjustment disorder, as a result of her hostile work environment. *Id.* at 1268-69. Plaintiff was also prescribed medication for her depression and anxiety. *Id.* at 1269. Defendants in that case moved for summary judgment. The court, however, denied that motion, finding there were sufficient questions of fact with respect to plaintiff's causes of action, specifically finding that the aforementioned facts and injuries adequately supported a triable NIED claim. *Id.*

Likewise, in *Switzer v. Rivera*, 174 F.Supp.2d 1097 (D. Nev. 2001), the plaintiff brought actions against her co-employee and employer alleging, *inter alia*, negligent infliction of emotional distress, assault, battery, and sexual harassment in violation of Title VII. *Switzer*, 174 F.Supp.2d at 1102. Again, this case arose out of allegation of sexual harassment and unwanted physical contact in the workplace. *Id.* at 1102. Plaintiff claimed defendants made offensive sexual jests, comments, and requested sexual acts. She also claimed nonconsensual contact,

primarily touching of her buttocks. *Id*. Because of this conduct, plaintiff allegedly suffered from sleeplessness, irritability, stress, and depression. *Id*. at 1108. She underwent psychiatric treatment, was diagnosed with adjustment disorder, and was prescribed medication for depression and anxiety, as a result of her hostile work environment. *Id*. Defendants filed a motion for summary judgment. *Id*. at 1102. In denying and dismissing that motion, the court reasoned that the aforementioned facts and their alleged effects presented triable issues of fact regarding whether there were sufficient emotional distress and physical for an NIED claim. *Id*. at 1109.

As in *Burns* and *Switzer*, Oliver Preiss was subject to unwarranted and nonconsensual physical touching, comments, and requests. Roy Horn's persistent and unabated sexual misconduct caused Oliver Preiss severe emotional distress with physical manifestations. (Compl. ¶ 110) Specifically, like *Burns* and *Switzer*, Plaintiff Oliver Preiss suffered extreme anxiety, depression, and sleeplessness; and had to seek medical treatment and medication. (Compl. ¶ 59, 110). The effects were so severe, he secured his home with multiple alarm systems, security cameras, and bullet-proof windows, at a cost of approximately $30,000. (Compl. ¶ 60). Therefore, as in *Burns* and *Switzer*, Oliver Preiss's Complaint alleges sufficient facts, demonstrating Roy Horn breached a duty owed to Oliver Preiss, which resulted in physical impacts and severe emotional distress with physical manifestations.

Contrary to Defendants' assertions, *Kennedy v. Carriage Cemetery Srvs*., --- F.Supp.2d ---, 2010 WL 2926083 (D. Nev. July 19, 2010) does not effectively limit NIED's claims to bystander theories. The court in that case stated that NIED claims "*typically* only lie where emotional harm is based on observance of a physical injury to another." *Id*. at *7. The operative word here is "typically," which is an implicit recognition by the court that NIED claims are

available to certain plaintiffs under certain circumstances. Such a situation is when NIED claims are based on sexual harassment, assault, and misconduct, as "unwelcome sexual advances, sexual remarks, crude innuendos, inappropriate physical touching, and retaliation" can constitute "extreme and outrageous conduct." *Switzer*, 174 F.Supp.2d at 1108. Thus, direct victims of direct sexual harassment and misconduct have NIED causes of actions as reflected by *Burns* and *Switzer*.

Further, *Kennedy* is factually distinct from this case, *Burns*, and *Switzer*, because the plaintiff in *Kennedy* asserts an NIED claim under a bystander theory. The court's discussion of *Shoen* was *dicta*, and generally only confirms that a simple negligence claim for emotional damages is only available under Nevada law if there are physical manifestations of the alleged emotional suffering, as is not the case in Hawaii. *See id.* at *8.

Therefore, since *Kennedy* does not negate the availability of a NIED claim for a directly injured plaintiff, this matter is legally and factually similar to *Burns* and *Switzer*, Oliver Preiss asserts sufficient facts demonstrating a viable NIED claim. Thus S&R et al.'s motion with regard to this cause of action should be denied. Oliver Preiss's claim should not be dismissed.

### 2) Oliver Preiss's Complaint Demonstrates Negligence And Damages Resulting From S&R et al.'s Conduct And He Therefore Has An Actionable Claim.

In the event this Court finds Oliver Preiss failed to state a cause of action for NIED or that an NIED claim is not available for a plaintiff in his position, Oliver Preiss should be granted leave to amend his pleadings. S&R et al.'s actions amount to actionable negligent conduct, which resulted in emotional and physical damages, as provided in the Complaint. (Compl. ¶ 8, 38-45, 51, 59-60, 104, 110)

Under the circumstances here, Roy Horn had a duty to exercise reasonable care and not act in a manner which, with reasonable foreseeability, would cause Oliver Preiss to suffer severe emotional distress, anxiety, and physical damages.  Roy Horn breached that duty, persistently groping and mistreating Oliver Preiss without consent (Compl. ¶ 8, 38-45, 51, 104) As a result, Oliver Preiss had to seek, and continues to seek, medical treatment and medication for anxiety, depression, and insomnia.  As stated throughout, S&R is also liable by virtue of the doctrine of *respondeat superior*.

Since "damages can be recovered for emotional harm stemming from other intentional or negligent torts" and Oliver Preiss's Complaint asserts facts supporting a plausible NIED claim and damages, he should be granted leave to amend his Complaint, if the Court dismisses his NIED claim. *Kennedy v. Carriage Cemetery Srvs.*, --- F.Supp.2d ---, 2010 WL 2926083, at *7 (D. Nev. July 19, 2010).

//

//

//

//

## IV.   <u>CONCLUSION</u>

In sum, the Plaintiffs' Complaint sufficiently alleges facts to support their claims, and none of the causes of action should be dismissed. Notably, S&R et al. do not contest the Fourth (Assault and Battery), Fifth (Intentional Infliction of Emotional Distress), and Eighth (Loss of Consortium) Causes of Action, nor deny the substance of those causes of actions.

Dated this _____ day of November 2010.

**NELSON LAW**

SHARON L. NELSON
Nevada Bar No. 6433
8670 W. Cheyenne, Suite 120
Las Vegas, Nevada 89129

MIKE MEIER
*To be admitted pro hac vice*
INTERNATIONAL LAW GROUP, LLC
6525 76th Street
Cabin John, MD 20818

Attorneys for Plaintiffs
OLIVER AND BEATRICE PREISS