1  MARVIN S. PUTNAM (*admitted pro hac vice*)
   MATTHEW G. MRKONIC (*admitted pro hac vice*)
2  O'MELVENY & MYERS LLP
3  1999 Avenue of the Stars, Suite 700
   Los Angeles, California  90067-6035
4  Telephone:   (310) 553-6700
   Facsimile:    (310) 246-6779
5  Email: mputnam@omm.com
   Email: mmrkonic@omm.com
6

7  JOHN T. MORAN, JR. (Nevada Bar #2271)
   JEFFERY A. BENDAVID (Nevada Bar #6220)
8  MORAN LAW FIRM LLC
   630 South Fourth Street
9  Las Vegas, Nevada 89101
   Telephone:   (702) 384-8424
10 Facsimile:    (702) 384-6568
   Email: john.moran@moranlawfirm.com
11 Email: j.bendavid@moranlawfirm.com
12
   Attorneys for Defendants
13 S&R PRODUCTION COMPANY and ROY HORN

14                **UNITED STATES DISTRICT COURT**

15                     **DISTRICT OF NEVADA**

| | |
|---|---|
| 16  OLIVER PREISS, *et al.*, | Case No. 2:10-cv-01795-RLH-(RJJ) |
| 17            Plaintiffs, | Hon. Roger L. Hunt |
| 18       v. | **DEFENDANTS' MOTION FOR ATTORNEYS' FEES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| 19  S&R PRODUCTION COMPANY, *et al.*, | |
| 20            Defendants. | |
| 21 | **AFFIDAVITS OF MARVIN S. PUTNAM AND MATTHEW G. MRKONIC IN SUPPORT THEREOF** |
| 22 | |
| 23 | **[28 U.S.C. § 1927]** |
| 24 | Complaint Filed: September 17, 2010 |
| 25 | Case Removed:  October 15, 2010 |

# **NOTICE OF MOTION**

TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEVADA, AND TO PLAINTIFFS AND THEIR ATTORNEYS:

PLEASE TAKE NOTICE that defendants S&R Production Company and Roy Horn hereby move for an award of attorneys' fees under 28 U.S.C. Section 1927 against plaintiffs' attorneys Sharon Nelson and Mike Meier.

Dated: April 8, 2011

Respectfully submitted,

By _____
    John T. Moran, Jr.
Attorneys for Defendants
S&R PRODUCTION COMPANY
and ROY HORN

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION.

Defendants move to recover a fraction of the attorneys' fees incurred because plaintiffs' counsel persisted in litigating claims long after they knew the claims were frivolous. When a party's counsel "multiplies the proceedings in any case unreasonably and vexatiously," that counsel "may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. That is precisely what occurred here. Because plaintiffs' counsel unnecessarily and vexatiously multiplied the proceedings in this case, this Court should require them to personally satisfy the excess attorneys' fees caused by their conduct.

Plaintiffs' principal strategy from the outset has been to make this litigation as expensive and as publicly embarrassing as possible for internationally renowned entertainers Roy Horn ("Roy") and Siegfried Fischbacher ("Siegfried"). Before plaintiffs brought this suit, plaintiffs' counsel tellingly demanded $500,000 from Roy Horn personally—ten times the maximum statutory damages under Title VII—to resolve the matter and keep it "confidential." Mike Meier later increased that demand to "seven figures."

When defendants refused to pay, plaintiffs set out to publicly embarrass Roy. Plaintiffs released surreptitious video recordings of Roy to the *National Enquirer*, and later posted a hidden camera recording of a conversation between Roy, Mr. Preiss, and a third party to the internet video-sharing website *YouTube*. This press campaign was deliberately designed to create the public perception that Roy Horn had sexually harassed Mr. Preiss—even though plaintiffs' counsel knew plaintiffs could not state a viable claim for sexual harassment under Title VII. But plaintiffs did not let the facts—or the law—get in the way of a good story.

In addition to this public story, plaintiffs' counsel was privately telling defendants' counsel another story: if defendants did not promptly pay the demanded moneys, plaintiffs would initiate a criminal investigation against Roy Horn. Before plaintiffs mounted their press campaign, plaintiffs' attorney Mike Meier e-mailed defense counsel that "we have another major problem." That "problem," according to Mr. Meier, was Nevada's criminal sexual assault statute,

1  which Mr. Meier copied into the text of the email.  In case the implication of his correspondence
2  could somehow be lost on defendants' counsel, Mr. Meier highlighted the definition of criminal
3  sexual assault and the penalties for a criminal conviction in a different color text for emphasis.
4  But Mr. Meier did not simply threaten Roy with criminal liability; he threatened Roy's personal
5  relationship with his longtime colleague, Siegfried, as well.  As Mr. Meier put it:  "It would be
6  better for all parties involved, however, if Siegfried never gets to see all the evidence."

7       Faced with the threat of civil and criminal liability, defendants vigorously defended this
8  action, and moved to dismiss several of plaintiffs' claims.  Then, as the Court prepared to rule on
9  defendants' motion to dismiss, plaintiffs' counsel tried to strip this Court of jurisdiction to rule on
10 the motion.  They filed a notice purporting to dismiss plaintiffs' Title VII claims and moved to
11 remand this case to state court.  The timing of those actions made their purpose abundantly clear:
12 plaintiffs feared a binding determination on the pending motion to dismiss.  And for good reason.
13 As this Court found, plaintiffs' various claims utterly lacked legal merit.  In particular, plaintiff
14 Oliver Preiss brought three Title VII claims against S&R despite the fact that he could not
15 allege—even in the most conclusory fashion—that S&R was Mr. Preiss's employer (a required
16 element of a Title VII claim).  And plaintiff Beatrice Preiss brought a claim for negligent
17 infliction of emotional distress ("NIED") based on harm she allegedly suffered from watching a
18 video recording of past events—despite the fact that a valid NIED claim requires a
19 *contemporaneous* observance of the events *near the scene of the event*.

20      Then, remarkably, to avoid the dismissal of these frivolous claims, plaintiffs' counsel filed
21 an equally frivolous motion to remand.  They claimed—as their sole basis for remand—that the
22 dismissal of plaintiffs' federal law claims stripped this Court of jurisdiction.  Again, they were
23 wrong.  That assertion had been expressly rejected by numerous Ninth Circuit and United States
24 Supreme Court opinions issued over the past three decades.  Because plaintiffs' counsel failed to
25 conduct even a cursory review of the relevant case law, defendants were forced to expend
26 considerable time and energy opposing a frivolous and unnecessary motion.  This Court should
27 therefore require plaintiffs' counsel to satisfy the excess fees defendants incurred opposing
28

2

plaintiffs' frivolous motion, and defending against several claims plaintiffs' counsel chose to maintain long after they knew those claims were frivolous.

**II.     THIS COURT SHOULD AWARD ATTORNEYS' FEES UNDER SECTION 1927.**

Section 1927 provides federal courts with the necessary discretion to require a party's attorney who "multiplies the proceedings in any case unreasonably and vexatiously" to personally satisfy the attorneys' fees caused by their conduct. 28 U.S.C. § 1927; *see also Thomas v. Girardi*, 611 F.3d 1027, 1060-61 (9th Cir. 2010). A fee award is proper under Section 1927 "when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *Larin Corp. v. Alltrade, Inc.*, No. EDCV 06-1394 ODW (OPx), 2008 U.S. Dist. LEXIS 65193, at *8-9 (C.D. Cal. July 11, 2008). As such, federal courts have repeatedly awarded fees in situations precisely analogous to that now before the Court. Here, plaintiffs' counsel raised several frivolous arguments, and maintained several frivolous claims, for the sole purpose of harassing defendants.

That said, it is important to note that defendants do *not* move for *all* fees they incurred in defending against plaintiffs' frivolous arguments. Defendants seek to recover only the excess fees incurred as a result of plaintiffs' *most frivolous arguments*—a mere fraction of the total fees incurred because of the vexatious conduct of plaintiffs' counsel. Specifically, defendants move for plaintiffs' counsel to satisfy a portion of defendants' attorneys' fees incurred opposing plaintiffs' frivolous motion to remand and defending against plaintiffs' most frivolous claims:

**A.     Time Spent Opposing Plaintiffs' Frivolous Motion To Remand.**

Plaintiffs' counsel moved to remand this case to state court on the purported ground that this Court was somehow stripped of jurisdiction when plaintiffs dismissed their federal law claims—and thus was required to remand the case under 28 U.S.C. Section 1447(c). *See* Plaintiffs' Mot. to Remand (Docket #32) (filed Feb. 14, 2011) at 2-4. Two decades of Ninth Circuit and United States Supreme Court precedent, however, make clear that plaintiffs' counsel was wrong. And that is precisely what this Court found. *See* Order Granting Defendants' Motion To Dismiss ("Dismissal Order") (Docket #35) (filed Mar. 17, 2011) at 3 ("remand is improper under the relevant case law"). In fact, there are no fewer than ten Ninth Circuit and Supreme

3

Court opinions explicitly holding that federal courts retain jurisdiction over state law claims *even if the federal law claims drop out*.[1]  Yet plaintiffs' counsel failed even to acknowledge—much less distinguish—the controlling authority expressly rejecting the sole basis for their motion to remand.  Instead, they simply asserted, without authority, that the law was otherwise.

In doing so, plaintiffs' counsel acted in bad faith.  For purposes of section 1927, "[b]ad faith is present when an attorney knowingly or recklessly raises a frivolous argument." *Estate of Blas v. Winkler*, 792 F.2d 858, 860 (9th Cir. 1986).  Indeed, where "a lawyer pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound, the conduct is objectively unreasonable and vexatious." *Riddle & Assocs., P.C. v. Kelly*, 414 F.3d 832, 835 (7th Cir. 2005); *see also Bolivar v. Pocklington*, 975 F.2d 28 (1st Cir. 1992) (upholding section 1927 fees award where "the complaint exhibits blatant disregard for a basic legal principle").  Here, there is no question that a "reasonably careful attorney" would have realized plaintiffs' sole ground for moving to remand was "unsound."

Counsel's bad faith is especially egregious in the context of a motion to remand because the apparent motivation for that motion was to manipulate the forum and deprive the Court of jurisdiction to decide defendants' pending motion to dismiss.  If successful, plaintiffs' attempt to remand the case would have further wasted the considerable resources defendants and this Court had already spent briefing and considering the motion to dismiss.  Plaintiffs, however, were not permitted such continued gamesmanship.  As this Court found, their "attempt fail[ed]." Dismissal Order at 3.  The Court denied plaintiffs' subterfuge as contrary to law and granted defendants' motion to dismiss.  *See id*. at 3-6.  Accordingly, this Court should award defendants fees for the time spent opposing plaintiffs' patently frivolous motion. *See Wild Game NG, LLC v. Wong's Int'l (USA) Corp.*, No. 3:05-CV-635-LRH (RAM), 2007 WL 2406811 (D. Nev. 2007) (awarding defendants fees for time spent opposing plaintiffs' frivolous motion to disqualify).

---

[1] *See, e.g.*, *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, -- U.S. --, 129 S. Ct. 1862, 1866 (2009); *Albingia Versicherungs A.G. v. Schenker Int'l, Inc.*, 344 F.3d 931, 937 (9th Cir. 2003); *Trustees of the Constr. Indus. & Laborers Health & Welfare Trust v. Desert Valley Landscape & Maint., Inc.*, 333 F.3d 923, 925 (9th Cir. 2003); *Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 159 F.3d 1209, 1213 (9th Cir. 1998); *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997); *Schneider v. TRW, Inc.*, 938 F.2d 986, 993-95 (9th Cir. 1991).

### B. Time Spent Defending Against Plaintiffs' Most Frivolous Claims.

Plaintiffs' counsel also litigated plaintiffs' frivolous claims long after they knew—or should have known—those claims had no legal merit whatsoever. Plaintiffs persisted in maintaining these claims long after the motion to dismiss was fully briefed and the parties had exchanged initial disclosures. *See* Affidavit of Marvin S. Putnam ("Putnam Aff.") ¶¶ 14, 17-18. Plaintiffs attempted to dismiss these claims only when they feared the Court was about to rule on the pending motion to dismiss. The timing of plaintiffs' actions shows they had no belief that these claims could survive a motion to dismiss—and that the only purpose of prosecuting these claims was to harass defendants.

Defendants now seek to recover only the attorneys' fees incurred in defending against plaintiffs' two most frivolous claims—Mrs. Preiss's NIED claim and Mr. Preiss's Title VII claims. And defendants only seek to recover the fees they spent obtaining the dismissal of those claims and for the work created by those claims in relation to the Court's Early Neutral Evaluation session. *See* Putnam Aff. ¶¶ 3, 5(g); *see also* Affidavit of Matthew G. Mrkonic ("Mrkonic Aff.") ¶¶ 7-11. Defendants do not seek fees for the considerable time they spent conducting a factual investigation of plaintiffs' claims or performing other tasks related to this case that were not directly related to the motion to dismiss or the Early Neutral Evaluation ("ENE") session. *See* Putnam Aff. ¶¶ 3, 5(g); Mrkonic Aff. ¶¶ 7-11. Accordingly, defendants seek half of the total time expended briefing the motion to dismiss and reply in support of the motion to dismiss, given that Mrs. Preiss's NIED claim and Mr. Preiss's Title VII claims comprised just over half of defendants' motion to dismiss. In the same vein, defendants seek fees for half the total time expended briefing their confidential ENE statement and participating in the ENE session.

#### 1. Mrs. Preiss's NIED Claim.

It is difficult to overstate the absurdity of Mrs. Preiss's NIED claim. Mrs. Preiss somehow brought an NIED claim based on the harm she purportedly suffered from watching a video recording of past events that apparently involved her husband and Roy Horn. *See* Putnam Aff. Ex. A at 12-13. As Mrs. Preiss and plaintiffs' counsel were well aware, however, a bystander

5

1  must have been "*located near the scene*" and be "emotionally injured by the *contemporaneous*
2  sensory observance" of the acts to bring an NIED claim.  *Grotts v. Zahner*, 989 P.2d 415, 416
3  (Nev. 1999).[2]  As defendants pointed out in their motion to dismiss, watching a video recording
4  *away from the scene* and *well after the acts allegedly occurred* cannot possibly constitute a
5  contemporaneous observance near the scene.  Faced with this irrefutable logic, plaintiffs' counsel
6  nonetheless claimed "Beatrice Preiss was near the scene in that she directly observed the
7  traumatic events unfold via video, which contemporaneously related to the direct emotional shock
8  she suffered."  Opp. to Mot. to Dis. (Docket #17) (filed Nov. 8, 2011) at 14.
9        This Court was not deceived.  As this Court held, "it is *incomprehensible* to claim that
10  video tape viewing of events somehow makes one physically present at the event."  Dismissal
11  Order at 5.  And "[t]he playing of a video taped recording hours, days, or weeks after an event is
12  *simply not contemporaneous* in nature."  *Id*.  This Court dismissed Mrs. Preiss's NIED claim,
13  concluding that, "*Plaintiffs misunderstand the requirements for an NIED claim*."  *Id*.  But there is
14  no excuse for plaintiffs' counsel's failure to understand the most basic elements of a tort claim
15  they chose to bring in the first place.  And even if their decision to bring the claim in the first
16  place was somehow excusable (and it is not), their decision to maintain the claim is inexcusable.
17  After all, attorneys' fees are to be awarded under section 1927 where plaintiffs' counsel "is
18  responsible for causing the suit to be filed and for allowing the litigation to continue when it knew
19  that [its client] could not win."  *Riddle & Assocs., P.C. v. Kelly*, 414 F.3d 832, 835 (7th Cir.
20  2005); *see also Dietrich v. John Ascuaga's Nugget*, No. 3:04-CV-0468-BES (VPC), 2007 WL
21  2264544, at *9 (D. Nev. Aug. 6, 2007) (counsel's "insistence in proceeding in the face of clear
22  legal and factual authority to the contrary, is tantamount to bad faith").  Such is the case here.
23        Indeed, Nevada district courts have awarded fees to defendants under section 1927
24  when—as now—plaintiffs' counsel opposed a dispositive motion despite the fact that plaintiffs'
25  claims were meritless.  *See, e.g.*, *Schutts v. Bentley Nev. Corp.*, 966 F. Supp. 1549, 1559-60 (D.
26  Nev. 1997) (awarding fees because plaintiff's counsel "recklessly opposed Defendant's well-
27  taken motion for summary judgment"); *Operating Engineers Pension Trust v. G.C. Wallace, Inc.*,

---

28  [2] Internal citations omitted and emphases added unless otherwise provided.

1   159 F.R.D. 536, 541 (D. Nev. 1994) (awarding fees to defendants because "Plaintiffs should have
2   known, before they filed their Opposition to the Motion for Summary Judgment, that they had no
3   cause to seek further prosecution of this action").  In *Schutts*, as here, defendants' motion directed
4   plaintiffs "to controlling judicial authority, authority which should have made plain to any
5   minimally competent lawyer the total meritlessness" of the claims.  966 F. Supp. at 1559-60.  It
6   was for this precise reason—which exists here as well—that the court in *Schutts* awarded
7   defendants *all* fees it incurred after defendants filed their motion for summary judgment.  *Id*. at
8   1565.  Yet defendants here request only a fraction of the time spent defending against plaintiffs'
9   frivolous claims.

### 2. Mr. Preiss's Title VII Claim.

Mr. Preiss's Title VII claims against S&R are equally frivolous.  It is black-letter law that a Title VII claim must be brought against a plaintiff's employer.  *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 503 (2006).  Plaintiffs, however, failed to plead any facts supporting their allegation that Mr. Preiss was employed by S&R.  *See generally* Putnam Aff. Ex. A.  That is because they could not.  And when defendants challenged the conclusory allegations of employment in plaintiffs' complaint, plaintiffs opposed dismissal despite the fact that their opposition brief did not—because it could not—claim Mr. Preiss was directly employed by S&R.

Instead, plaintiffs' counsel deliberately attempted to obfuscate the issue to add further time and cost to the proceedings.  For instance, they deliberately created the defined term "S&R et al."—which included both Roy Horn and S&R—to create the misleading impression that Mr. Preiss was retained by S&R, when in fact he was only retained by Roy Horn.  *See* Opp. to Mot. to Dis. (Docket #17) (filed Nov. 8, 2011) at 6.  Plaintiffs' counsel then made the outrageous claim that they needed to conduct discovery to determine *whether* Mr. Preiss was somehow employed by S&R.  *See id*.  It is absurd that a plaintiff would need to conduct discovery to determine who *actually employed him*.  Furthermore, as plaintiffs' counsel well knew, discovery on the issue of who employed Mr. Preiss would only have confirmed that Mr. Preiss was not employed by S&R.  In fact, *plaintiffs' own initial disclosures contained several letters from Mr. Preiss stating emphatically that he did not work for S&R.  See, e.g.*, Putnam Aff. Ex. B at 0089 ("I would like to

7

1  make sure that I only work personally for Mr. Roy.  I'm not employed by you or the S&R office.

2  My only boss is Mr. Roy himself.").  He thus showed that he knew he did not work for S&R but

3  nonetheless continued to claim otherwise in his filings.  This is clear bad faith.

4         This Court was not misled by these delay tactics.  Although the Court permitted Mr. Preiss

5  to voluntarily dismiss his Title VII claims, the Court noted that his "Title VII claims would have

6  fallen regardless due to Mr. Preiss' insufficient allegations regarding S&R being his employer."

7  Dismissal Order at 4.  Furthermore, while plaintiffs' voluntary dismissal of the Title VII claims is

8  nominally without prejudice, it effectively operates as an adjudication on the merits because they

9  are now time-barred from re-pleading their Title VII claims.[3]

10         For plaintiffs to voluntarily dismiss their Title VII claims months after the motion to

11  dismiss had been fully briefed, when the voluntary dismissal did not even preserve their claims

12  for future pleading, shows that plaintiffs' sole goal in dismissing their Title VII claims was to

13  manipulate the forum and avoid the dismissal of their other frivolous claims.  Accordingly, this

14  Court should award defendants fees for the time they spent opposing plaintiffs' Title VII claims.

15  *See Schutts*, 966 F. Supp. at 1559-60 (D. Nev. 1997) (awarding defendants all fees it incurred in

16  the action after plaintiffs recklessly opposed plaintiffs' motion for summary judgment under

17  section 1927).

18  **III.**     **THE ATTORNEYS' FEES REQUESTED ARE REASONABLE.**

19         The proper method for determining the reasonableness of a fees award in this case is the

20  "lodestar" method, which takes a reasonable number of hours and multiplies it by a reasonable

21  hourly rate.  *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992).  Under this lodestar

22  method, defendants' fees request is eminently reasonable.  Defendants request only a fraction of

23  the attorneys' fees they incurred due to the vexatious and unreasonable conduct of plaintiffs'

---

[3] Mr. Preiss was required to bring his Title VII claim within 90 days of the issuance of a right-to-sue letter from the Equal Employment Opportunity Commission.  *See* 42 U.S.C. § 2000e-5(f)(1).  Because he was issued a right-to-sue letter from the EEOC on June 21, 2010, he had until Sunday, September 19, 2010 to file a complaint.  If he seeks to re-file, he will be doing so well after the 90-day tolling period expired.  Such a claim would be time-barred even though his original claim was filed within the 90-day period.  *See O'Donnell v. Vencor, Inc.*, 465 F.3d 1063, 1066 (9th Cir. 2006).

8

counsel. Defendants seek only the *excess* attorneys' fees that plaintiffs' counsel produced by multiplying proceedings in this case—not the fees defendants would have had to incur to defend this action regardless of plaintiffs' counsel's conduct. Mrkonic Aff. ¶ 11; *see also id*. ¶¶ 6-10. To this end, defendants only request attorneys' fees for the following time spent on particular tasks: (1) time defendants spent opposing plaintiffs' motion to remand ($38.855.25 for 80.6 hours); (2) half of the time defendants spent on the motion to dismiss and the reply brief in support of the motion to dismiss ($33,990 for 80.6 hours of labor of work spent on the initial motion, and $11,241.25 for 25.9 hours of work spent on the reply brief); and (3) half the time defendants spent briefing and attending the ENE session ($24,994.75 for 53.9 hours of work). In total, this amounts to $109,217.75 for 241.1 hours of work.[4]  Mrkonic Aff. ¶¶ 6-10; Putnam Aff. ¶¶ 3, 8-9.

### A. **Defendants Request Only A Fraction Of The Hours Spent On This Case.**

Defendants request attorneys' fees for 241.1 hours of work—only a fraction of the total hours defendants' counsel spent defending against plaintiffs' complaint. *See* Putnam Aff. ¶ 3. Defendants request no time for any time spent researching and investigating plaintiffs claims after Mr. Preiss filed his Equal Employment Opportunity Commission ("EEOC") charge, but before he filed his complaint. *See* Mrkonic Aff. ¶¶ 6-10. And defendants wrote off all time spent investigating factual issues or conducting legal research not directly related to the motion to dismiss, the motion to remand, or the ENE session. *Id*. Furthermore, defendants voluntarily wrote off *all time* spent by co-counsel at The Moran Law Firm—even for time spent on the motion to dismiss, the motion to remand, or the ENE session—to avoid any possible duplication of work (even though counsel carefully avoided any such duplication). *Id*; *see also* Putnam Aff. ¶ 5(g). In total, defendants' request amounts to less than a third of the total time defendants spent litigating this case since plaintiffs filed their initial complaint. *See id*. ¶ 3.

---

[4] Defendants attached to this motion an affidavit of defendants' lead counsel, Marvin S. Putnam of O'Melveny & Myers LLP, describing and justifying the reasonable attorneys' fees and costs that defendants incurred. The affidavit, and the accompanying affidavit of Matthew G. Mrkonic, provides billing information for each attorney who worked on the case, delineates the time they expended, and details the tasks they performed. Mrkonic Aff. ¶¶ 6-10. These fees are reasonable under relevant factors found in *Kerr v. Screen Extras Guild*, *Inc.*, 526 F.2d 67, 70 (9th Cir. Cal. 1975). *See* Putnam Aff. ¶¶ 2-9; Mrkonic Aff. ¶¶ 6-10.

9

1        **1.     Defendants Have Consistently Tried To Keep Costs Down.**

Defendants have made every effort to avoid wasting resources and engaging in needless duplication of work, despite plaintiffs' attempts to thwart these efforts. For example, defendants moved to stay discovery until the Court resolved the pending motion to dismiss on the grounds that S&R might be removed from the lawsuit and the scope of issues might be different. *See* Defendants' Proposed Discovery Plan And Scheduling Order (filed November 19, 2010) (Docket #24) at 2-5. This was designed to prevent the parties from incurring potentially unnecessary discovery costs. *See id*. Although plaintiffs' opposed this request, *see* Plaintiffs' Proposed Discovery Plan And Scheduling Order (filed Nov. 16, 2010) (Docket #20) at 2, Magistrate Judge Johnston granted defendants' requested discovery stay, *see* Minute Order Granting Discovery Stay (entered November 30, 2010) (Docket #26). Defendants also sought to avoid a waste of party resources by successfully opposing plaintiffs' motion to remand, thus preventing needless re-briefing of the issues in a subsequent action.

**2.     The Time Spent By Defendants' Counsel Was Reasonable Given Plaintiffs' Obstreperous Conduct.**

Even if the time defendants' counsel spent defending against plaintiffs' claims would be unreasonable in an ordinary case, it is eminently reasonable given plaintiffs' conduct in this case. Plaintiffs brought this suit only after demanding $500,000 from Roy Horn to resolve the matter and keep it "confidential." *See* Putnam Aff. ¶ 10; *see also id*. Ex. C. This amount is ten times the maximum statutory damages under Title VII. *See* 42 U.S.C. 1981a(b)(3)(A) (damages for entities with less than 100 employees are capped at $50,000). Plaintiffs' counsel, Mike Meier, later increased plaintiffs' demand to "seven figures." *See* Putnam Aff. ¶ 10. This potential seven-figure liability was compounded by the fact that plaintiffs' complaint requested both punitive damages and attorneys' fees as well. *See* Putnam Aff. Ex. A.

Defendants did not simply have to defend against seven-figure liability. They had to mount a vigorous defense given that plaintiffs were litigating this case in the press. Plaintiffs released surreptitious video recordings of defendant Roy Horn to the *National Enquirer*. *See* Putnam Aff. ¶ 16 *see also id*. Ex. E. Plaintiffs later posted a hidden camera recording of a

conversation between Roy, Mr. Preiss, and a third party to the internet video-sharing website *YouTube*. *See* Putnam Aff. ¶ 16; *see also id*. Ex. E.

Furthermore, plaintiffs' counsel threatened a criminal investigation against Roy. Before plaintiffs began their public smear campaign, plaintiffs' counsel Mike Meier e-mailed defense counsel that "we have another problem." *See* Putnam Aff. ¶ 12 *see also id*. Ex. F. Mr. Meier's "problem" was Nevada's criminal sexual assault statute, which he copied into the text of the email with the penalties for a criminal conviction in a different color text for emphasis. *See id*. Privately, Mr. Meier threatened Roy's relationship with his longtime colleague Siegfried as well. *See* Putnam Aff. ¶ 11; *see also* Ex. G. Given these threats of public embarrassment, criminal prosecution, and seven-figure civil liability, defendants had no choice but to mount a vigorous defense. (Not to mention that at least one federal court has considered the type of extortionate conduct exhibited by Mr. Meier as a basis for attorneys' fees under section 1927. *See FM Industries, Inc. v. Citicorp Credit Servs.*, 614 F.3d 335, 338-41 (7th Cir. 2010) (awarding fees where counsel "were playing games, engaged in extortion, or both").) Plaintiffs' requested lodestar hours are undoubtedly reasonable given the exceptional circumstances of this case.

### B. Defendants' Requested Rates Are Also Reasonable.

#### 1. The Requested Rates Are Comparable to Other Firms.

The proper hourly rate under the lodestar analysis is the basic fee for comparable legal services in the district. *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992) (hourly rate awarded should reflect "the rates of attorneys practicing in the forum district"). As discussed in detail in the accompanying declaration of Marvin S. Putnam, O'Melveny & Myers, LLP's requested rates are comparable to the rates charged by similar firms practicing in this district. *See* Putnam Aff. ¶¶ 4-7.[5] The rates charged by O'Melveny in this matter range from $675-$750 for partners, $630 for counsel, and $284.61-$415 for associates. Putnam Aff. ¶ 5-6. Plaintiffs'

---

[5] Information regarding comparable firm billing practices is difficult to find given many firms' reluctance to make their hourly rates public. However, evidence of billing rates can be gained from fee applications filed in Nevada federal courts. As evidenced from fees reports in various proceedings, national law firms with offices in Nevada charge rates comparable to O'Melveny. *See* Putnam Aff. ¶ 7; *see also id*. Exs. H, I, J (fee applications).

1  requested lodestar rate (the weighted blended rate of all O'Melveny attorneys that worked on this
2  case) is $452.53.  Putnam Aff. ¶ 3.
3        Indeed, Nevada district courts have found that hourly rates similar to O'Melveny's
4  lodestar rate are reasonable for practice in the district.  *See, e.g.*, *Wheeler v. Coss*, No. 3:06-cv-
5  00717-RAM, 2010 WL 2628667, at *2-3 (D. Nev. June 28, 2010) ("based on its experience and
6  knowledge of the prevailing rates in the District of Nevada, the court finds that $350 per hour
7  remains a reasonable rate"); *Marshall v. Kirby*, No. 3:07-cv-00222-RAM, 2010 WL 4923486, at
8  *5 (D. Nev. Nov. 29, 2010) (hourly rate of $350 is reasonable); *Cosgrove v. Whorton*, No. 3:06-
9  cv-00703-LRH-RAM, 2008 WL 4934011, at *3 (D. Nev. Nov. 14, 2008) (hourly rate of $350 is
10 reasonable); *see also Montgomery v. Etreppid Tech, LLC*, No. 3:06-cv-0056-PMP (VPC), 2008
11 WL 820072, at *5 (D. Nev. Mar. 24, 2008) (hourly rates including $400 per hour are reasonable).
12       Any concern about the reasonableness of O'Melveny's rates should be extinguished by
13 the fact that O'Melveny voluntarily wrote off 54.2 hours of work performed by co-counsel
14 briefing the motion to dismiss and the motion to remand, and preparing for and attending the ENE
15 session.  *See* Putnam Aff. ¶ 11(i).  If these written-off hours were included in the lodestar analysis
16 (but not the amount charged for those hours, which is written off), the lodestar rate would be less
17 than $370.  This lodestar rate would be considerably lower still if defendants had requested *all* of
18 the time defendants spent defending against *all* plaintiffs' frivolous claims.  Instead, defendants
19 request only the time defendants' counsel spent defending against those claims in the context of
20 the motion to dismiss and the Early Neutral Evaluation session.  In total, defendants request fees
21 for less than 250 hours of work, despite the fact that defendants' counsel actually billed more than
22 three times that amount litigating this case after the complaint was filed.  *See* Putnam Aff. ¶ 3.

      **2.  The Requested Rates Are Warranted Given The Complexity Of The Case, Skill Of The Attorneys Involved, And Results Achieved.**

25       In any case, O'Melveny's rates are warranted given the complexity of this case, the skill
26 of the attorneys involved, and the results plaintiffs achieved.  O'Melveny is one of the oldest and
27 most respected law firms in the country, and defendants' lead attorney, Marvin Putnam, is known
28 as one of the best in the field.  *See* Putnam Aff. ¶ 7.  In 2010, O'Melveny was named to *The*

*American Lawyer* A-List, a distinction awarded to the 20 law firms "that best embody what it means to be a success in the legal community." Putnam Aff. ¶ 7; *see also id*. Ex. K. Mr. Putnam, in turn, is widely recognized as a leader in the field of entertainment and intellectual property litigation. *See id*. ¶ 5(a). In addition to serving as trial counsel in this case, he has served on several high-profile entertainment cases and was named by *The Hollywood Reporter* to its 2010 "Power Lawyers: Top 100 Outside Counsel" list of leading entertainment lawyers; he has been named to this same list for each of the past three years. *Id*. ¶ 5; *see also id*. Ex. L.

The issues in this case required lawyers of this exceptional skill level. Plaintiffs' complaint on its face implicated complex issues of federal anti-discrimination law and state tort law (notwithstanding the factual deficiencies of those claims). *See generally* Putnam Decl. ¶¶ 10-20. But this case also implicated complex evidentiary issues raised by plaintiffs' purported "evidence"—evidence that defendants contend is actually unlawfully-obtained surreptitious video recordings of defendants. Furthermore, litigating this case required counsel that could not only defend against plaintiffs' action, but vindicate defendants' rights as well. Defendants believe plaintiffs engaged in a variety of tortious conduct including unlawful wiretapping, invasion of privacy, breach of contract, and other claims. Litigating these claims required experienced and skilled trial counsel.

Finally, O'Melveny's rates are justified by the results that defendants' counsel achieved for their clients. Defendants successfully stayed discovery pending the motion to dismiss to avoid wasteful and potentially unnecessary discovery, successfully opposed plaintiffs' motion to remand this case without resolving defendants' motion to dismiss, and successfully obtained the dismissal of plaintiffs' NIED and *respondeat superior* claims. Even plaintiffs' Title VII claims, which were voluntarily dismissed, are now time-barred. Because of these results, defendant S&R is now permanently freed from this litigation, and several substantive claims have been dismissed as against defendant Roy Horn.

## IV.   CONCLUSION.

For the foregoing reasons, defendants respectfully request that this Court award defendants $109,217.75 in attorneys' fees for 241.1 hours of work under section 1927, for which

13

Sharon Nelson and Mike Meier shall be jointly and severally liable, for time defendants' counsel spent on the following tasks:

- Half of the total number of hours O'Melveny attorneys billed for work on Defendants' Motion to Dismiss: $33,990 for 80.6 hours.
- Half of the total number of hours O'Melveny attorneys billed for work on defendants' Reply In Support Of Defendants' Motion to Dismiss: $11,241.25 for 25.9 hours.
- Half of the total number of hours O'Melveny attorneys billed for work on the Early Neutral Evaluation session and confidential statement: of $24,994.75 for 53.9 hours.
- All of the hours O'Melveny attorneys billed for work on defendants' Opposition To Plaintiffs' Motion To Remand: $38,855.25 for 80.6 hours.

Dated: April 8, 2011

Respectfully submitted,

By _____
    John T. Moran, Jr.
Attorneys for Defendants
S&R PRODUCTION COMPANY
and ROY HORN

14